IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 11-C-4607 |
| ) | |
| CATHAL LYNCH, d/b/a/ ATLANTIC BAR & ) | |
| GRILL, THE ATLANTIC BAR & GRILL ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On July 7, 2011, plaintiff Joe Hand Promotions, Inc. ("Joe Hand") filed a complaint against the Atlantic Bar & Grill and its owner Cathal Lynch (together, the "Atlantic"), asserting claims for unauthorized interception of communications through the air in violation of 47 U.S.C. § 605 (Count I), unauthorized interception of communications through a cable system in violation of 47 U.S.C. § 553 (Count II), and conversion under Illinois law (Count III). Currently before the court is the Atlantic's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 13). For the reasons explained below, the Atlantic's Motion is granted as to Count III and denied as to Counts I and II.

BACKGROUND

The Atlantic is a restaurant and bar located in Chicago, Illinois. Dkt. No. 1 ("Compl.") ¶ 7. The complaint alleges that on July 11, 2009, the Atlantic broadcast a boxing match titled the *Ultimate Fighting Championship 100: "Making History"* ("*Ultimate Fighting Championship*"). *Id.* ¶¶ 10, 13. Plaintiff Joe Hand is a commercial distributor of sporting events which claims the exclusive right to distribute the *Ultimate Fighting Championship*. *Id.* ¶¶ 10, 12. Joe Hand alleges

1

that the Atlantic's broadcast of the boxing match was unauthorized, that the Atlantic knew it was unauthorized, and that the Atlantic nonetheless willfully broadcast the *Ultimate Fighting Championship*. *Id.* ¶ 13.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. College Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor. *Id.*

## ANALYSIS

**I.**     **Counts I and II:** 47 U.S.C. §§ 553, 605

Counts I and II claim that the Atlantic's alleged misappropriation of the *Ultimate Fighting Championship* violated two separate federal statutes. The first, 47 U.S.C. § 605, prohibits the

unauthorized interception and use of "satellite cable programming." 47 U.S.C. § 605(d)(1); *see also United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996). The second, 47 U.S.C. § 553, provides that no unauthorized "person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). The Seventh Circuit has held that § 605 applies only to satellite or radio transmittal, and not to transmittal by cable, and that § 553 applies only to cable systems. *Norris*, 88 F.3d at 469. Consequently, a defendant cannot be liable under both statutes for the same act. *See J & J Sports Prods., Inc. v. Banda*, 2009 WL 960098, at *3 (N.D. Ill. Apr. 8, 2009) (No. 08-2570) (Der-Yeghiayan, J.).

The Atlantic seizes on the mutual exclusiveness of the two statutes to argue that the court should dismiss Counts I and II because they are not brought in the alternative. Pleading in the alternative is allowed, of course,[1] but only when the complaint explicitly indicates an intention to so plead, or when it "use[s] a formulation from which [an intent to plead in the alternative] can be reasonably inferred." *See Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). The Atlantic contends that Joe Hand's complaint lacks an explicit indication of alternative pleading, and notes that all of the allegations in Count I are incorporated by reference in Count II. *See* Compl. ¶ 18.

Nonetheless, the court concludes that the complaint indicates a sufficient intention to plead in the alternative. The mutual exclusiveness of § 605 and §553 is well-established law. In light of that legal principle, any complaint asserting that a single action violates both statutes can only be interpreted as stating alternative claims. That reasoning is particularly appropriate where the identification of the correct statute depends on ascertaining a fact of which the plaintiff may not yet

---

[1] *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

be aware, namely, whether the defendant intercepted the *Ultimate Fighting Championship* by satellite or through a cable system. Allowing discovery of that fact will provide the necessary enlightenment to indicate under which statute the plaintiff should recover. Meanwhile, the Atlantic is in no danger of recovery under both statutes, given the established law precluding that result. *See J & J Sports Prods., Inc. v. Rezdndiz*, 2008 WL 5211288, at *3 (N.D. Ill. Dec. 9, 2008) (No. 08-4121) (Grady, J.). Given the impossibility of any prejudice, the Atlantic "is making a mountain out of a molehill," *id.*, and the court declines to go along with Atlantic as it does.

Moreover, even if the court agreed with the Atlantic, the proper course of action would be to allow Joe Hand to amend its complaint to add explicit language indicating alternative pleading, which it would surely do. *See Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). The court declines to put the parties through that pointless rigamarole.

The Atlantic next contends that the complaint is legally insufficient under *Bell Atlantic Corp. v. Twombly*, which requires the plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The Atlantic's arguments fail, however, because Joe Hand's complaint includes ample factual detail to demonstrate the plausibility of the allegations. The complaint clearly identifies the broadcast program allegedly misappropriated by Atlantic, Compl. ¶ 10, the place of the alleged violation, *id.* ¶ 13, the date of the alleged violation, *id.* ¶ 10, the existence of a contract establishing Joe Hand's exclusive rights to show the broadcast program, *id.*, the absence of authorization allowing Atlantic lawfully to show the broadcast program, *id.* ¶ 13, and the Atlantic's alleged willfulness in misappropriating the broadcast program, *id.* In addition, a reasonable inference from the statutes listed in the complaint is that the broadcast program was misappropriated by satellite or cable. Nothing more is or should be required to state a claim under

§ 553 and § 605. Accordingly the Atlantic's motion to dismiss Counts I and II is denied.

II.     Count III: Conversion

Count III purports to allege a claim for conversion under Illinois law based on the Atlantic's misappropriation of the *Ultimate Fighting Championship*. To prove conversion in Illinois, a plaintiff must establish that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). The Atlantic contends that the court should dismiss Count III because the tort of conversion does not extend to the misappropriation of intangible property such as a television program transmitted via satellite or cable. To decide this substantive question of Illinois law, the court "must make a predictive judgment as to how the supreme court of the state would decide the matter if it were presented presently to that tribunal." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635 (7th Cir. 2002). If there is no definitive guidance from the supreme court, however, "federal courts ought to give great weight to the holdings of the state's intermediate appellate courts." *Id.* at 637.

On the legal point at issue, Illinois courts have unfortunately provided conflicting guidance. The Illinois Supreme Court has approvingly quoted a treatise stating that "'[i]t is ordinarily held, however, that an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible.'" *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985) (quoting 18 Am. Jur. 2d *Conversion* § 9, at 164 (1965)). The Illinois Supreme Court's own statement of the applicable rule did not include a tangibility limitation, however, but stated only that "the subject of conversion is required to be an identifiable object of property of which the plaintiff

5


was wrongfully deprived." *Id.* Subsequent Illinois appellate courts have made contradictory statements on the question, thus providing no additional guidance.[2]

The ambiguity has divided the judges in this district on the issue of whether the interception of television programming can qualify as conversion under Illinois law. At least eight district judges have held that the tort of conversion is applicable in such circumstances.[3] Eight other judges, however, have gone the other way.[4] Almost all of the decisions on both sides, however, occurred in 2003-2005, before the court had the benefit of two more recent developments.

The first development is a new case from the Illinois appellate courts, *The Film and Tape Works, Inc. v. Junetwenty Films, Inc.*, 856 N.E.2d 612, 624 (Ill. App. 1st Dist. 2006). That case casts doubt on the perception that Illinois appellate courts are trending toward expanding conversion

---

[2] *Compare Bilut v. Northwestern Univ.*, 692 N.E.2d 1327, 1334 (Ill. App. Ct. 1998) ("Our supreme court has stated that an action for conversion lies only for personal property that is tangible or at least represented by or connected with something tangible." (citing *Thebus*, 483 N.E.2d 1258)), *with Stathis v. Geldermann, Inc.*, 692 N.E.2d 798, 807 (Ill. App. Ct. 1998) ("In this State, however, parties may recover for conversion of intangible assets.").

[3] *J & J Sports Prods., Inc. v. Banda*, 2009 WL 960098 (N.D. Ill. Apr. 8, 2009) (No. 08-2570) (Der-Yeghiayan, J.); *DirecTV v. Alter*, 2004 WL 1427108 (N.D. Ill. June 23, 2004) (No. 04-0675) (Keys, J.); *DirecTV, Inc. v. Klein*, 2004 WL 1243952 (N.D. Ill. June 2, 2004) (No. 03-8090) (Mason, J.); *DirecTV, Inc. v. Ostrowski,* 334 F. Supp. 2d 1058 (N.D. Ill. 2004) (Filip, J.); *DirecTV, Inc. v. Dillon*, 2004 WL 906104 (N.D. Ill. Apr. 27, 2004) (No. 03-8578) (Aspen, J.); *DirecTV, Inc. v. Hauser*, 2004 WL 813628 (N.D. Ill. Apr.13, 2004) (No. 03-8396) (Moran, J.); *DirecTV, Inc. v. Dyrhaug*, 2004 WL 626822 (Mar. 26, 2004) (No. 03-8389) (Shadur, J.); *Directv, Inc. v. Delaney*, 2003 WL 24232530 (N.D. Ill. Nov. 20, 2003) (No. 03-3444) (Kocoras, J.).

[4] *DirecTV, Inc. v. Vanderploeg*, 2005 WL 497797 (N.D. Ill. Mar. 2, 2005) (No. 04-3883) (Andersen, J.); *DirecTV, Inc. v. Sampey*, 2004 WL 2032102 (N.D. Ill. Aug.19, 2004) (No. 03-8520) (Lindberg, J.); *DirecTV, Inc. v. Wilson*, 2004 WL 1094244 (N.D. Ill. May 13, 2004) (No. 03-3516) (Grady, J.); *DirecTv, Inc. v. Hinton*, 2004 WL 856555 (N.D. Ill. Apr. 21, 2004) (No. 03-8477) (Darrah, J.); *DirecTV, Inc. v. Frey*, 2004 WL 813539 (N.D. Ill. Apr. 14, 2004) (No. 03-3476) (Zagel, J.); *Directv, Inc. v. Maraffino*, 2004 WL 170306 (N.D. Ill. Jan.23, 2004) (No. 03-3441) (Lefkow, J.); *DIRECTV, Inc. v. Castillo*, 2004 WL 783066 (N.D. Ill. Jan.2, 2004) (No. 03-3456) (St. Eve, J.); *Directv, Inc. v. Patel*, 2003 WL 22682443 (N.D. Ill. Nov.12, 2003) (No. 03-3442) (Coar, J.).

to cover taking of intangible property, a perception significant to the district judges holding that television programming can be converted. *See, e.g.*, *Ostrowski*, 334 F. Supp. 2d at 1063-64. That perception was based on three cases decided during 1987 and 1998.[5] The court, despite diligent research, has not found any decisions since 1998 supporting the supposed perception that conversion under Illinois law can include the taking of intangible property such as the misappropriation of televised broadcast of a boxing match.[6] Instead, the only new case on the topic, the First District Appellate Court's decision in *Film and Tape Works*, cuts the other way by stating that "intangible property rights cannot be the subject of conversion unless they are merged into a tangible document over which the alleged tortfeasor exercised dominion or ownership." *Film and Tape Works*, 856 N.E.2d at 624. The First District Appellate Court went on to hold that a videotaping company has no cause of action for conversion against employees who improperly took customers with them when they left the company.

*Film and Tape Works* thus clarifies the Illinois Supreme Court's statement in 1985 in the *Thebus* case that intangible rights can be converted when connected with something tangible by establishing that the connection must be to a tangible document, such as "'promissory notes, bonds,

---

[5] *Bilut*, 692 N.E.2d 1327; *Stathis*, 692 N.E.2d 798; *Conant v. Karris*, 520 N.E.2d 757 (Ill. App. Ct. 1987).

[6] In addition to their age and the absence of subsequent confirmation, the three cases themselves do not definitively support the expansion of the tort of conversion. In *Conant*, "the tangible versus intangible property issue appears to not have been squarely litigated," so the decision is not precedential. *Ostrowski*, 334 F. Supp. 2d at 1063. The other two cases have conflicting language on the question. *See supra* note 2. Moreover, the court's statement in *Stathis* that "parties may recover for conversion of intangible assets" was dicta, as the court ultimately upheld a jury verdict rejecting the conversion theory. *See Stathis*, 692 N.E.2d at 807 ("*Assuming that conversion of intangible assets is legally cognizable*, the jury's finding that defendants did not convert Gus' property was not against the manifest weight of the evidence . . . ." (emphasis added)).

bills of exchange, share certificates, and warehouse receipts.'" *Id.* (quoting Restatement (Second) of Torts §242 cmt. b, at 473-74 (1965)). The First District Appellate Court explained further that "[t]hese documents all share in common the fact that they are tangible documents containing intangible rights which are easily convertible into tangible assets, not dissimilar to currency." *Id.* Because the oral contracts for the performance of services that the videotaping company had with its customers were not easily convertible to a tangible asset, the First District Appellate Court concluded, the customers' alleged misappropriation could not be the basis of an action for conversion under Illinois law. *Id.*

Joe Hand's exclusive right to broadcast the *Ultimate Fighting Championship* is similarly difficult to convert to a tangible asset. To do so, Joe Hand would have to enter into licensing agreements that are analogous to the videotaping company's contracts. *See* Compl. ¶ 11. It cannot directly convert its exclusive right to cash, as with a promissory note or bond. *Film and Tape Works* thus counsels excluding television programming from an action for conversion.

The second development is additional guidance from the Seventh Circuit on the law of conversion in Illinois. Previously, some federal district judges had looked for guidance to *FMC Corp. v. Capital Cities/ABC, Inc.* and its statement that, "[a]s Prosser and Keeton have noted . . . '[t]here is perhaps no very valid and essential reason why there might not be conversion' of intangible property." 915 F.2d 300, 301 (7th. Cir. 1990) (quoting *Prosser & Keeton on the Law of Torts* ch. 3, § 15, at 92 (5th ed. 1984)); *see also Ostrowski*, 334 F. Supp. 2d at 1064-65. The *FMC Corp.* case, however, was interpreting California law. *FMC Corp.*, 915 F.2d at 303. Thus, although the Seventh Circuit's decision appealed to general principles of tort law and "would be reached under the conversion and replevin laws of *most* states," it is not necessarily applicable to Illinois law.

*Id.* at 302 n.2 (emphasis added).

More recently, the Seventh Circuit has pronounced on Illinois law specifically with the flat statement that "Illinois courts do not recognize an action for conversion of intangible rights." *Am. Nat'l Ins. Co. v. Citibank*, 543 F.3d 907, 910 (7th Cir. 2008) (citing *Janes v. First Fed. Sav. & Loan Ass'n.*, 297 N.E.2d 255, 260 (Ill. App. Ct. 1973)). The court applied that principle to deny an insurance company's action for conversion of negotiable instruments when the payee of the instrument was the insurance company's agent. *Id.* The court held that the insurance company's intangible rights to the money underlying the instrument, which were granted by the separate agency contract, did not merge into the tangible instrument, and thus were not recoverable in an action for conversion. *Id.* Although *American National Insurance* did not provide extended analysis of Illinois law, the absence of any discussion about extending conversion to intangible rights unconnected with a tangible document indicates that the Seventh Circuit did not think the possibility was even plausible. The Seventh Circuit thus agrees that Illinois courts have not expanded the tort of conversion, which should remain tethered to its common law roots requiring tangible property or some connection to a tangible document.

To be sure, there may be good policy reasons for extending the tort of conversion to intangible property. *See generally* Laura D. Mruk, *Wi-fi Signals Capable of Conversion: The Case for Comprehensive Conversion in Illinois*, 28 N. Ill. L. Rev. 347 (2008). A federal court sitting in diversity, however, is not charged with developing policy, but rather with "apply[ing] the law of the state in which it sits." *Allstate Ins. Co.*, 285 F.3d at 634. Whatever trend there may be in general law, Illinois courts have not yet extended the tort of conversion to intangible property like television programming. The court thus dismisses Count III of Joe Hand's complaint, which has failed to state

a claim for conversion under Illinois law.

CONCLUSION

For the reasons explained above, the Atlantic's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 13) is granted in part and denied in part. Because intangible property like television programming cannot be the subject of a claim for conversion in Illinois, Count III is dismissed with prejudice. The other counts appropriately state a claim for relief and will stand.

ENTER:

_____
JAMES F. HOLDERMAN

Chief Judge, United States District Court

Date: November 30, 2011